1

2

3

4

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

6

7

8

9

10

11

12

CRYSTAL KIMBLE,

     Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

     Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. CV-11-3076-CI

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

13

14

15

16

17

18

19

20

    BEFORE THE COURT are cross-Motions for Summary Judgment.  ECF
No. 17, 22.  Attorney D. James Tree represents Crystal Kimble
(Plaintiff); Special Assistant United States Attorney Daniel E.
Burrows represents the Commissioner of Social Security (Defendant).
The parties have consented to proceed before a magistrate judge.
ECF No. 7.  After reviewing the administrative record and briefs
filed by the parties, the court **GRANTS** Plaintiff's Motion for
Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

21

### JURISDICTION

22

23

    On   October   18,   2007,   Plaintiff   protectively   filed   an

24

25

26

27

28

    [1]Carolyn W. Colvin became the Acting Commissioner of Social
Security on February 14, 2013.  Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted
for Michael J. Astrue as the defendant in this suit. No further
action need be taken to continue this suit.  42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

1  application for both supplemental security income and for disability
2  insurance benefits, alleging disability beginning March 15, 2007.
3  Tr. 18; 173.

4      In her application for benefits, Plaintiff reported that she
5  stopped working due to severe depression and anxiety.  Tr. 177.
6  Plaintiff's claim was denied initially and on reconsideration, and
7  she requested a hearing before an administrative law judge (ALJ).
8  Tr. 18; 106-118.  A hearing was held on January 21, 2010, at which
9  Vocational Expert Deborah Lapoint, medical expert Marian Martin,
10  M.D., and Plaintiff, who was represented by counsel, testified.  Tr.
11  43-105.  ALJ Gene Duncan presided.  Tr. 43.  The ALJ denied benefits
12  on February 12, 2010.  Tr. 18-31.  Plaintiff appealed to the Appeals
13  Council, and submitted additional evidence.  Tr. 5; 11-12.  The
14  Appeals Council denied review.  Tr. 1.  The instant matter is before
15  this court pursuant to 42 U.S.C. § 405(g).

16                    **STATEMENT OF THE CASE**

17      The facts of the case are set forth in detail in the transcript
18  of proceedings and are briefly summarized here.  At the time of the
19  hearing, Plaintiff was 32 years old, and living alone in an
20  apartment in Yakima, Washington.  Tr. 47; 49.  Plaintiff graduated
21  from high school, and attended one year of college.  Tr. 48; 73.
22  She has three children, and in 2004, the children were removed from
23  her care due to neglect.  Tr. 67.  Plaintiff has worked as a nurse's
24  assistant, a cashier, stock clerk, janitor, industrial cleaner,
25  shipyard laborer and housekeeping cleaner.  Tr. 89-90.  Her last job
26  was as a general laborer and Plaintiff testified that in 2007, after
27  she was laid off, she was unsuccessful in finding other work.  Tr.
28  51-52.  Plaintiff explained that she had a series of short-term jobs

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

because she was often fired for attendance problems, although she was once fired for theft. Tr. 81. She said she experienced migraines and depression and would also have anxiety attacks at work. Tr. 81.

Plaintiff also testified that the "main reason" she cannot return to work is that she "simply mentally cannot handle working." Tr. 52. Plaintiff stated that she has severe migraines, depression, and anxiety, in addition to fibromyalgia, post-traumatic stress disorder and ADD. Tr 52. She said she has had problems getting along with her neighbors, landlord, and people at work. Tr. 82-83.

Plaintiff performs the household chores in her apartment, but she said she has broken many dishes because she cannot properly grip the dishes due to weakness in her hands. Tr. 79-80. Plaintiff has extensive criminal history, and she was arrested in 2008 for identity theft, and in 2009 on a shoplifting charges. Tr. 371.

## ADMINISTRATIVE DECISION

At step one, ALJ Duncan found Plaintiff had not engaged in substantial gainful activity since March 15, 2007, the alleged onset date. Tr. 20. At step two, he found Plaintiff had the following severe impairments: obesity, headaches, and depressive disorder, not otherwise specified. Tr. 21. At step three, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926). Tr. 26. The ALJ found Plaintiff has the Residual Functional Capacity ("RFC") to perform light work with the following limitations:

> She should not operate dangerous machinery or work at heights. She can engage in frequent handling , gripping, and fine fingering. She is capable of routine, learned

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

work.  She can work independently, not in coordination with coworkers.  She is capable fo superficial contact with the public and with coworkers, and routine subjective supervision.  She can work where there is no intense interactions with others.  She is capable of following oral and written instructions for changes in the job setting.  She cannot work where there is direct access to drugs or alcohol.  She should not work  with children or where other's security is involved.  She can be expected to be off-task 4.5% of the workday.  She should not make executive decisions.  She should not work in crowds.  She would likely miss 2 days in a month and may need an extra 10 minute break once or twice a month.

Tr. 27.

In his step four findings, the ALJ found Plaintiff's statements regarding pain and limitations were not credible to the extent they were inconsistent with the RFC findings.  Tr. 27.  The ALJ found that Plaintiff was able to perform past relevant work as a housekeeper/cleaner.  Tr. 29.  Alternatively, the ALJ found after considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that the Plaintiff can perform, such as price marker.  Tr. 31.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of*

*Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

occupation.   20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).   If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ISSUES**

Plaintiff contends that the ALJ erred by (1) improperly rejecting her treating and examining providers' opinions; (2) conducting an improper step four analysis; and (3) failing to meet his burden at step five to identify specific jobs, available in significant numbers, that Plaintiff can perform.  ECF No. 18 at 10.

**ANALYSIS**

**A.   Medical Opinions**

Plaintiff contends that the ALJ failed to properly consider the opinions of Philip D. Rodenberger, M.D., the mental health therapists and the medical expert at the hearing.  ECF No. 18 at 14.

**1.   Philip D. Rodenberger, M.D.**

Plaintiff argues that the ALJ's reasons for rejecting Dr. Rodenberger's opinion were not legitimate.   The ALJ's offered reasons were that no supporting documentation existed and his opinion was contradicted by the opinion of Dr. Toews and psychologist Arch Bradley.  ECF No. 18 at 13-14.

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1)

treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id*. Where a treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; see also *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

"The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007).

Dr. Rodenberger completed a check-the-box Mental Residual Functional Capacity Assessment on November 20, 2008. Tr. 353-55.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

Dr. Rodenberger assessed Plaintiff with several marked limitations in understanding and memory, and sustained concentration and persistence.  Tr. 353-54.  Dr. Rodenberger also assessed Plaintiff with multiple moderate limitations in every category.  Tr. 353-54.

The ALJ reviewed Dr. Rodenberger's completed questionnaire. Tr. 23-24.  In weighing the opinion evidence, the ALJ stated that Dr. Rodenberger's assessment was "carefully considered," but noted that no supporting documentation existed to support his conclusions. Tr. 29.  Additionally, the ALJ noted that a few months prior to Dr. Rodenberger's opinion, Dr. Toews evaluated Plaintiff and concluded that Plaintiff was capable of sustaining attention to simple tasks, interacting with others and she could tolerate supervision.  Tr. 29. The ALJ also noted Dr. Bradley's report also contradicted Dr. Rodenberger's opinions about Plaintiff's limitations.  Tr. 29.

While Plaintiff contends Dr. Rodenberger was Plaintiff's treating physician, as the Defendant points out, no treating records from this physician exist in the record, save a single reference to Dr. Rodenberger prescribing medication.  Tr. 370.  A treating physician's opinion is given greater weight because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989), quoting *Sprague*, 812 F.2d at 1230.  In this case, no evidence exists that Dr. Rodenberger was a treating physician and, therefore, entitled to the deference normally given a treating physician's opinion.  Even if Plaintiff had established Dr. Rodenberger was a treating physician, the ALJ's reason that no objective medical evidence existed to support Dr. Rodenberger's opinion was a "specific and legitimate" reason and is supported by

the record.  Plaintiff neither provided treating records from Dr.
Rodenberger that would support his opinions, nor does medical
evidence from other providers support his assessment of Plaintiff's
limitations.

Plaintiff disagrees with the ALJ's conclusion that Dr.
Rodenberger's opinion was contradicted by Drs. Toews and Bradley.
ECF No. 18 at 14.  A review of the record reveals Plaintiff's
position is not supported.  Dr. Rodenberger, as stated above, found
Plaintiff had limitations in every functioning category – most were
moderate, but several were marked. Tr. 353-55.  By contrast, Dr.
Toews assessed Plaintiff and found she was cognitively intact, and
able to sustain attention and concentration to simple tasks,
interact with others and tolerate supervision.  Tr. 29; 322.  Dr.
Toews noted that Plaintiff's results indicated she was malingering.
Tr. 320.  Dr. Toews opined that Plaintiff's test scores indicated
she had good auditory attention, concentration, and good auditory
comprehension and memory.  Tr. 321.  Her other test results
indicated she functions in the average range of intelligence and her
cognitive functioning and her memory capabilities are sufficient for
functioning in a wide range of occupations.  Tr. 322.  Dr. Toews
concluded that Plaintiff was "cognitively intact.  She is able to
sustain attention and concentration to simple tasks, interact with
other individuals, and tolerate supervision.  It is likely she is
attempting to exaggerate cognitive and memory problems in an effort
to obtain disability benefits."  Tr. 322.

Dr. Bradley administered to Plaintiff the WAIS-III and
completed a Psychological/Psychiatric evaluation on February 6,
2008.  Tr. 273.  Dr. Bradley provided limited information, but did

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 9

indicate Plaintiff had average intellectual functioning, no cognitive or social limitations, and her social presentation and verbal communication were average. Tr. 274-75. On review, the record supports the ALJ's determination that Dr. Rodenberger's assessment was contradicted by Dr. Toews and Dr. Bradley and, thus, this was a "specific and legitimate" reason to discount Dr. Rodenberger's opinion.

### 2. Treating Therapists[2]

Plaintiff argues that the ALJ's reasons for rejecting the treating therapists opinions was vague, and he failed to provide specific, "germane" reasons for rejecting each therapists' opinion. ECF No. 18 at 15. Social workers and certified mental health specialists are not considered to be medical sources under the Social Security regulations. 20 C.F.R. § 416.913(a)(1) (establishing that medical sources are only considered to be licensed physicians (medical or osteopathic doctors), licensed or certified psychologists and, with certain limitations, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).

---

[2]Plaintiff fails to identify the "treating therapists" whose opinions were improperly weighed in his argument section. ECF No. 18 at 15-16; ECF No. 24 at 4-5. The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief. *See Carmickle v Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1161 n.2 (9th cir. 2008). Because Defendant's response to this issue identifies therapists Nikki Roger and Dick Moen, the court reviews the opinions of those therapists in analyzing the issue. ECF No. 23 at 15.

The ALJ may consider evidence from sources such as therapists and social workers when determining the severity of a claimant's impairment.   20 C.F.R. § 416.913(d)(1); see also SSR 06-03p ("information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function").   A medical source who is not "an acceptable medical source" may be given more weight if that source has "seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion."   SSR 06-03p.

The ALJ noted several DSHS evaluations in the record indicated Plaintiff was severely limited in social and cognitive functioning. Tr. 29.  The ALJ provided several reasons for giving little weight to those evaluations, including that the opinions are contradicted by medical evidence in the record, are not supported by objective medical evidence, and the assessments relied heavily upon subjective allegations of Plaintiff, who was not credible.   Tr. 29.

On January 3, 2008, Nikki Roger, LICSW, completed a Psychological/Psychiatric Evaluation form, and diagnosed Plaintiff with major depressive disorder, recurrent, moderate, cannabis dependence in full sustained remission, learning disorder and "mental retardation versus borderline intellectual functioning." Tr. 258. Ms. Rogers opined that Plaintiff was markedly limited by depression and the ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting.   Tr. 259. Ms. Rogers also found that Plaintiff had several moderate limitations, including the ability to understand, remember and

follow complex instructions, the ability to learn new tasks, and the ability to interact appropriately in public contacts.  Tr. 258-59.

Ms. Rogers again completed a Psychological/Psychiatric Evaluation form on April 7, 2008.  Tr. 356-59.  On this form, she diagnosed Plaintiff with major depressive disorder, recurrent, moderate, and found Plaintiff had severe limitations in her ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting.  Tr. 358.  Ms. Rogers assessed several moderate limitations in Plaintiff's cognitive functioning, and one in social functioning.  Tr. 358.  Ms. Rogers recommended psychological evaluation.  Tr. 358-59.

Dick Moen, MSW, completed a Psychological/Psychiatric Evaluation form on February 26, 2009.  Tr. 363-66.  Mr. Moen diagnosed Plaintiff with major depression, recurrent, and assessed Plaintiff with moderate limitations in every category of cognitive and social functioning.  Tr. 365.  Mr. Moen opined that Plaintiff's depression had not been treated for a long time, and he concluded it would take at least one year to stabilize enough to allow for work. Tr. 366.

As reviewed above, Dr. Toews and Dr. Bradley respectively opined that Plaintiff was cognitively intact, able to sustain attention and concentration to simple tasks, interact with others, tolerate supervision, she had average intellectual functioning, no cognitive or social limitations, and her social presentation and verbal communication were average.  Tr. 274-75; 322.  Moreover, a review of the record fails to reveal treatment records or objective medical tests that would support Mr. Moen and Ms. Rogers' opinions related to Plaintiff's severe limitations.  The ALJ need not accept

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

a medical opinion if it is brief, conclusory, and inadequately supported by clinical findings or by the record. *Batson*, 359 F.3d at 1195. Germane reasons to discount an opinion include contradictory opinions and lack of support in the record. See, *Thomas,* 278 F.3d at 957.

Additionally, the ALJ noted that the assessments were primarily based upon Plaintiff's self-reporting, and Plaintiff was not credible. Tr. 29. Where a medical source opinion is based primarily on a claimant's self-reported symptoms, credibility is an appropriate factor to consider in the evaluation of medical evidence at step two. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). Plaintiff has not challenged the ALJ's determination of credibility. As a result, the ALJ's reasons for giving little weight to the opinions of Ms. Rogers and Mr. Moen are germane and supported by the record.

**B.   Step Four**

Plaintiff agues that the finding that Plaintiff could perform her past relevant work was predicated upon the vocational expert's response to incomplete hypothetical questions that did not properly include the limitations assessed by the testifying medical expert, and, thus, the ALJ erred at Step Four. ECF No. 18 at 17-18. Additionally, Plaintiff argues that the ALJ failed to properly consider whether housekeeping cleaner qualified as past relevant work (ECF No. 18 at 18).

**1.   The Hypothetical**

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

1  national economy.'" *Carmickle*, 533 F.3d at 1166 (citation omitted).

2  "Although the burden of proof lies with the claimant at step four,

3  the ALJ still has a duty to make the requisite factual findings to

4  support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844

5  (9th Cir. 2001).   The ALJ must make "specific findings as to the

6  claimant's residual functional capacity, the physical and mental

7  demands of the past relevant work, and the relation of the residual

8  functional capacity to the past work." *Id*. at 845; SSR 82-62.  "A

9  vocational expert or specialist may offer relevant evidence within

10  his or her expertise or knowledge concerning the physical and mental

11  demands of a claimant's past relevant work, either as the claimant

12  actually performed it or as generally performed in the national

13  economy."   20 C.F.R. § 404.1560(b).

14       A hypothetical question posed to a VE must include all

15  impairments supported by substantial evidence. *Osenbrock v. Apfel*,

16  240 F.3d 1157, 1164-65 (9th Cir. 2001).  Reliance on a hypothetical

17  that fails to include all accepted limitations is insufficient to

18  carry the agency's burden of proving the ability to engage in

19  alternative work. *Andrews*, 53 F.3d at 1044.  The ALJ may carry his

20  burden of showing an ability to do other work by eliciting the

21  testimony of a VE in response to a hypothetical that sets out all

22  the limitations and restrictions of the claimant that are supported

23  by the record. *Andrews*, 53 F.3d at 1043.

24       An ALJ must propound a hypothetical to a VE that is based on

25  medical assumptions supported by substantial evidence in the record

26  that reflects all the claimant's limitations.  See *Roberts v.*

27  *Shalala*, 66 F.3d at 184.  The hypothetical should be "accurate,

28  detailed, and supported by the medical record." *Tackett*, 180 F.3d

at 1101.  It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record.  *Magallanes*, 881 F.2d at 756-57.

The ALJ gave "great weight" to the opinion of testifying medical expert, Marian Martin, Ph.D.  Tr. 29; 125.  At the hearing, Dr. Martin stated that Plaintiff appeared to have mild impairment in activities of daily living, concentration, persistence and pace, and moderate impairments in social functioning, with no episodes of decompensation.  Tr. 62.  Dr. Martin explained that parts of the record revealed that Plaintiff had some problems getting along with supervisors, and her moderate limitation "would affect certainly her ability to sustain work, but not – does not preclude it."  Tr. 63. Dr. Martin explained that while overall impairment in concentration, persistence and pace was mild, in sustaining attention and concentration for extended periods, the symptoms of depression and anxiety would interfere with these abilities.  Tr. 65.  Dr. Martin also explained that when Plaintiff is under situational stress, she experiences more symptoms of depression and anxiety and that combination would push Plaintiff's mild impairments to moderate in the category of the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 65.

The ALJ proposed the following hypothetical:

> [A]n individual who is the same age as the claimant, same education and past work experience; and further assume that the claimant obtains a residual function[al] of [sic] capacity for routine-learned medium level work, as defined by the Social Security Regulations, and should not operate dangerous machinery or work at heights, work independently, not in coordination of co-workers, but have

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

1   superficial contact with the public and co-workers, should
    have routine objective supervision, and have no intensive
2   interactions with others.  Changes in a job setting should
    be followed by instructions in oral and written form for
3   this claimant.

4        . . .

5   Should not have direct access or drugs - to drugs or
    alcohol, should not work with children, should not do
6   security work, would be off-task four and a half percent
    of the workday, and would miss six to eight hours per
7   month in varying increments, should not work in crowds,
    should not make executive decisions.
8
9        . . .

10  Light work, can frequently grip panel and fine finger,
    might need an extra break once or twice a month.

11  Tr. 92-93

12       Defendant responds that the ALJ adequately adapted Dr. Martin's

13  testimony into the RFC and in support, cites *Stubbs-Danielson v.*

14  *Astrue*, 539 F.3d 1169 (9th Cir. 2008).  ECF No. 23 at 20-21.  In

15  *Stubbs-Danielson,* the Ninth Circuit found that "an ALJ's assessment

16  of a claimant adequately captures restrictions related to

17  concentration, persistence, or pace where the assessment is

18  consistent with restrictions identified in the medical testimony."

19  *Id.* at 1174.  In that case, the claimant was moderately limited in

20  his ability to perform at a consistent pace without an unreasonable

21  number and length of rest periods and mildly limited in several

22  other mental functioning areas, and the ALJ included in the RFC that

23  the claimant was limited to simple tasks.  *Id.* at 1173-74.  The

24  Eighth Circuit found that where a state psychologist identified

25  claimant as having deficiencies of concentration, persistence or

26  pace and the ability to "sustain sufficient concentration and

27  attention to perform at least simple, repetitive, and routine

28  cognitive activity without severe restriction of function," the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 16

ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately captured claimant's deficiencies in concentration persistence or pace. *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001); see also *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001)(where ALJ's hypothetical incorporated concrete restrictions identified by examining psychiatrist regarding quotas, complexity, and stress, ALJ did not err in failing to include that claimant suffered from deficiencies in concentration, persistence, or pace).

In this case, it is not apparent that the ALJ incorporated Dr. Martin's assessment of Plaintiff's moderate deficiencies with concentration, persistence and pace into his RFC.  For example, the RFC does not limit Plaintiff to simple tasks.  While other medical evidence in the record might support a lack of impairment in this category,[3] the ALJ stated he gave "great weight" to the opinions of Dr. Martin because she "was able to review the longitudinal record and set forth any resulting limitations, which are supported by the record and not based solely upon subjective statements made by the claimant."  Tr. 29.  A valid explanation may exist for the omission of this limitation as assessed by Dr. Martin, but the ALJ did not provide one.  "Regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for h[is] decision and [the courts] confine our review to the reasons supplied by the ALJ." *Steele v. Barnhart*, 290 F.3d 936, 941(7th Cir. 2002)

---

[3]See, e.g., Mental RFC Assessment form completed by Edward Beaty, Ph.D. Tr. 334-36.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17

1 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95, 63 S.Ct. 454, 87

2 L. Ed. 626 (1943) (other citations omitted)).

3     When Plaintiff's counsel questioned the VE about a hypothetical

4 individual who had moderate limitations in the ability to maintain

5 attention and concentration for extended periods, in the ability to

6 complete a normal workday without interruption from psychologically

7 based symptoms and to perform at a consistent pace without an

8 unreasonable number and length of rest periods, and the ability to

9 accept instructions and respond appropriately to criticism form

10 supervisors, the VE opined such an individual would not be able to

11 sustain employment.  Tr. 99.

12     In this case, the ALJ stated he gave great weight to the

13 opinion of Dr. Martin, but failed to include all her assessed

14 limitations in the hypothetical posed to the VE.  As a result, the

15 hypothetical was incomplete and the VE's testimony predicated upon

16 the incomplete hypothetical was of no evidentiary value.  See

17 *Carmickle*, 533 F.3d at 1166 (VE's testimony "has no evidentiary

18 value" where hypothetical question is incomplete); *Lewis v. Apfel*,

19 236 F.3d 503, 517 (9th Cir. 2001).

20     **2.   Past Relevant Work**

21     Additionally, the Plaintiff charges that the ALJ failed to make

22 a proper finding that housework, cleaner, qualified as past relevant

23 work.  Past relevant experience is defined as "work . . . done

24 within the past 15 years, that was substantial gainful activity, and

25 that lasted long enough . . . to learn how to do it." 20 C.F.R. §

26 404.1560(b)(1).  In addition to the timeliness and duration

27 requirements, to qualify as past relevant work, Plaintiff's earnings

28 must exceed the presumptive amount for monthly earnings in 2004.  In

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 18

evaluating whether a claimant's work is substantial and gainful, the ALJ's primary consideration will be the earnings the claimant derives from the work activity. 20 C.F.R. § 404.1574(a)(1); see also SSR 83-33 ("[E]arnings provide an objective and feasible measurement of work.") When a claimant earns more than the primary amount set forth in the earning guidelines contained in SSR 83-33, a rebuttable presumption arises that the claimant was engaged in substantial gainful activity.

Plaintiff admitted that she performed housekeeping in "various jobs" for over one year, the bulk of Plaintiff's work history is from the time period after 1995. Tr. 88; 161-67. The job of cleaner, housekeeping, DOT 323.687-014, is classified as level 2 Specific Vocational Preparation ("SVP"), which unskilled. 20 C.F.R. § 404.1568(a); Tr. 90. Under the Social Security regulations, "unskilled work" is defined as work that requires "little or no judgment" in performing "simple" duties that can be learned "on the job" and "in a short period of time." A job with a level 2 SVP requires training time required to learn the job of up to one month. 20 C.F.R. §§ 404.1568(a),[4] 416.968(a)(2008). Thus, Plaintiff easily meets the duration test for establishing

---

[4] 20 C.F.R. §§ 404.1568(a):

(a) Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

1  housekeeping as past relevant work.   However, as Plaintiff points
2  out, the ALJ failed to establish that Plaintiff's housekeeping jobs
3  amounted to substantial gainful activity.

4  **C.   Remedy**

5      When an ALJ's denial of benefits is not supported by the
6  record, "the proper course, except in rare circumstances, is to
7  remand to the agency for additional investigation or explanation."
8  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal
9  quotation marks omitted).   The court may exercise discretion and
10 direct an award of benefits "where no useful purpose would be served
11 by further administrative proceedings and the record has been
12 thoroughly developed." *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th
13 Cir. 1989).   Remand for further proceedings is appropriate where
14 outstanding issues exist that must be resolved before a
15 determination can be made, and it is not clear from the record that
16 the ALJ would be required to find the claimant disabled if all the
17 evidence were properly evaluated.   *See Vasquez v. Astrue,* 572 F.3d
18 586, 593 (9th Cir. 2009); cf. *Reddick v. Chater*, 157 F.3d 715, 729
19 (9th Cir. 1998) ("[w]e do not remand this case for further
20 proceedings because it is clear from the administrative record that
21 Claimant is entitled to benefits.").

22      In this case, the ALJ's residual functional capacity
23 determination was flawed and the hypothetical question was
24 incomplete.   When Plaintiff's attorney asked the VE a hypothetical
25 based upon Plaintiff's limitations as assessed by Dr. Martin, the VE
26 testified that the hypothetical individual would not be able to
27 sustain competitive employment.   Because the ALJ indicated he gave
28 great weight to Dr. Martin's opinion, and because substantial

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 20

evidence exists in the record to support the moderate limitations, these limitations should have been incorporated into the ALJ's hypothetical. As a result, remand is appropriate. *Harman*, 211 F.3d at 1180 ("In cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits.").

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. On remand, the ALJ must present a hypothetical to the vocational expert which includes all of his findings, supported by substantial medical evidence, regarding plaintiff's functional limitations. Additionally, the ALJ shall reevaluate the opinions of the medical source opinions, explain the weight given to acceptable medical sources, and, if necessary, provide legally sufficient reasons for rejecting acceptable medical source opinions. Also, if necessary, the ALJ will take medical expert testimony and vocational expert testimony at a new hearing. Finally, on remand, the ALJ will reevaluate his determination at step four and step five. The decision is therefore **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 17)** is **GRANTED** and the matter is **REMANDED** to the Commissioner for additional proceedings.

2. Defendant's Motion for Summary Judgment **(ECF No. 22)** is

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 21

1   **DENIED**;

2        3.   An application for attorney fees may be filed by separate

3   motion.

4        The District Court Executive is directed to file this Order and

5   provide a copy to counsel for Plaintiff and Defendant. Judgment

6   shall be entered for Plaintiff, and the file shall be **CLOSED**.

7        DATED March 26, 2013.

8

9                       S/ CYNTHIA IMBROGNO
                   UNITED STATES MAGISTRATE JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28